**STATE of Minnesota, Respondent,**

v.

**Edward LOVE, Appellant.**

**No. C8–83–52.**

Supreme Court of Minnesota.

June 15, 1984.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., St. Paul, for respondent.

YETKA, Justice.

Defendant was found guilty by a district court jury of three counts of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a) (1982), and three counts of intrafamilial sexual abuse in the first degree, section 609.3641, subd. 1(1) (1982). The charges were based on allegations that defendant sexually penetrated his daughter on three separate nights, January 1, 2 and 3, 1982, shortly before the victim turned 12. The trial court sentenced the defendant for the three counts of intrafamilial sexual abuse to three concurrent 43 month prison terms. On this appeal from judgment of conviction, defendant seeks (1) an outright reversal of his convictions on the ground that the evidence of his guilt was legally insufficient; (2) a new trial because the trial court prejudicially erred in (a) denying a pretrial motion to dismiss the three counts of criminal sexual conduct, (b) admitting testimony by a psychiatrist that the complainant exhibited symptoms consistent with her claim of penetration and that she said nothing to indicate she was being untruthful, and (c) excluding evidence indicating that the complainant was lying when she described the appearance of defendant's semen; or, at least, (3) a vacation of the three criminal sexual conduct convictions pursuant to Minn.Stat. § 609.04 (1982). We affirm.

■ 1. Defendant's first contention is that the evidence of his guilt was legally insufficient. The complainant was an intelligent girl who complained immediately about the abuse and thereby put a stop to it about a week after it started. She later told her mother that what she had said was untrue, but the evidence indicated that she made the retraction because she did not want anyone to get hurt. Still later, when she could not keep it within her any longer, she told her teacher. She had many subsequent opportunities to retreat from her story, but never did, even though it meant living in a foster home separated from her family. The medical testimony—*i.e.,* that her hymen was not intact and that her vaginal opening was larger than normal for

one her age—corroborated her testimony. We conclude that the jury was justified in crediting her testimony and in finding defendant guilty as charged.

2. Defendant makes three claims in support of his contention that he should be given a new trial:

(a) First, he argues that the trial court's denial of his pretrial motion to dismiss the criminal sexual conduct charges was prejudicial error. Defendant contends that the legislature, in enacting the statutes on intrafamilial sexual abuse, intended that all cases clearly falling within the provisions be prosecuted as cases of intrafamilial sexual abuse rather than as cases of criminal sexual conduct. In support of this, he relies on *State v. Kalvig,* 296 Minn. 395, 209 N.W.2d 678 (1973), and on an affidavit from one of the state senators who sponsored the bill.

Prosecution for intrafamilial sexual abuse can be preferable to prosecution for criminal sexual conduct in terms of sentencing. A trial court sentencing a defendant for criminal sexual conduct may depart dispositionally from the presumptive sentence and place the defendant on probation only if the defendant is particularly amenable to probation or if offense-related mitigating circumstances are present. A trial court sentencing a defendant for intrafamilial sexual abuse may depart dispositionally from the presumptive sentence and place the defendant on probation for the additional reason that probation is in the best interests of the complainant or the family unit. However, the fact that there are reasons for a defendant wanting to be prosecuted for intrafamilial sexual abuse rather than criminal sexual conduct does not mean that a prosecutor is obligated to prosecute him that way.

Our decision in *State v. Chryst,* 320 N.W.2d 721, 722 (Minn.1982), discussed the *Kalvig* case, relied upon by defendant, and the relevant principles as follows:

> Defendants are charged with theft by swindle for fraudulently obtaining the property of others by means of buying used cars, altering the odometers, "washing" the titles, then reselling the cars to dealers at an inflated price based on the lower odometer readings. They contend that instead of being prosecuted for felony theft they should be prosecuted for a gross misdemeanor offense under Minn. Stat. § 325E.14 (1980), which *inter alia* prohibits selling or offering any motor vehicle with knowledge that the odometer has been altered without disclosing that fact to the prospective purchaser. They based this contention on our decision in *State v. Kalvig,* 296 Minn. 395, 209 N.W.2d 678 (1973).
>
> In *Kalvig* we affirmed the dismissal of felony theft charges against a defendant who allegedly fraudulently received welfare payments, holding that the legislature's enactment of a specific law making welfare fraud of the type alleged a misdemeanor indicated a legislative intent that all welfare fraud of that type be prosecuted as a misdemeanor rather than under the felony theft statute. We base the determination of legislative intent on the fact that the two statutes cover the same conduct. Since the conflict between the two statutes was irreconcilable and since the rule in such a situation is that the more specific statute governs, we concluded that the prosecution pursuant to the theft statute was barred. We also pointed to a statement of legislative policy set forth in the welfare fraud statute at that time which supported our interpretation.
>
> This case is different from *Kalvig.* As we stated in *State v. Olkon,* 299 N.W.2d 89, 106 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), "[t]he essence of a swindle is the defrauding of another of his property by deliberate artifice." That is, "the statute punishes any fraudulent scheme, trick, or device whereby the wrongdoer deprives the victim of his money or property by deceit or betrayal of confidence." *State v. Ruffin,* 280 Minn. 126, 130, 158 N.W.2d 202, 205 (1968).
>
> The odometer tampering statute contains a provision that prohibits selling or

offering to sell a car knowing that the odometer has been altered without disclosing that fact to the prospective purchaser. However, not all people who commit acts falling within this prohibition also violate the theft statute. One can sell a car knowing that it has been altered without disclosing that fact and yet not commit the crime of theft by trick or swindle, because the odometer tampering offense does not require intent to defraud or the obtaining of property that one would not have obtained but for the failure to disclose. Similarly, one can violate the odometer tampering statute by offering to sell a car knowing that its odometer has been altered without disclosing that fact, whereas the theft statute could be violated in this context only by a completed sale.

The basic rule is that absent legislative intent to the contrary and absent discrimination against a particular class of defendants, the prosecutor may prosecute under any statute that the defendant's acts violate without regard to the penalty. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *State v. Walker*, 319 N.W.2d 414 (Minn.1982). In this case there is no reason to believe that the legislature intended to limit the prosecutor's discretion to prosecute the alleged conduct under the theft statute and we therefore agree with the district court's ruling * * *.

■ Defendant has not persuaded us that the legislature intended to limit the prosecutor's discretion to prosecute under the criminal sexual conduct statute. Rather, it appears that the legislature wanted to give the prosecutor discretion to prosecute under the intrafamilial sexual conduct statute in certain cases where more lenient treatment of the defendant would be in the best interest of the complainant or the family unit. Our recent decision in *State v. Haase*, 341 N.W.2d 879 (Minn.1984), which held that adjudicating a defendant guilty of both criminal sexual conduct and intrafamilial sexual abuse for the same conduct did

not violate Minn.Stat. § 609.04 (1982), is consistent with the view that the prosecutor, in an appropriate context, is free to prosecute under either or both of the statutes.

(b) Defendant's second argument in support of his contention that he should be given a new trial is that the trial court erred in admitting testimony by a psychiatrist that the victim's symptoms were consistent with her claim of penetration and that she said nothing to indicate that she was being untruthful.

The briefs present the issue of the admissibility of the evidence that the symptoms were consistent with the claim of penetration in terms of the broad issue of the admissibility of so-called child rape trauma syndrome evidence. We do not address or decide the issue in this case because defense counsel did not object to the evidence and the evidence was not put in the form of child rape trauma syndrome evidence.

■ Defense counsel did object to the testimony by the psychiatrist that the victim said nothing to indicate that she was lying. On the general subject of admitting opinion evidence as to whether or not a defendant or a complainant or other witness is or was lying, *see State v. Ellert*, 301 N.W.2d 320 (Minn.1981). The psychiatrist did not actually give an opinion that the complainant was telling the truth; he only said that she did not say anything to indicate that she was lying. Arguably, there is a difference. In any event, other evidence bearing on the complainant's truthfulness or lack of it was freely offered by both the prosecutor and defense counsel and admitted without objection by either the prosecutor or the defense counsel. The evidence in question was cumulative at worst.

■ (c) Defendant's final claim of trial error relates to the trial court's exclusion of evidence that defendant contends indicated that the victim was lying. The victim in her testimony described the appearance

of defendant's semen. On cross-examination of defendant's wife, who was first called by the state, defense counsel asked her if there was a "difference" in defendant's "sperms" following his vasectomy in February of 1981. The trial court sustained the prosecutor's objection, stating that it was "purely a medical question." A medical doctor later testified for the state that semen would look the same even after a man had a vasectomy. Since the trial court let the complainant testify about the appearance of defendant's semen and let the doctor testify that a vasectomy does not change the appearance of a man's semen, the trial court should have let defendant's wife testify about the appearance of his semen if her testimony was properly offered. However, the record contains no offer of proof. Further, defendant has not established that he was prejudiced by the court's ruling. Indeed, it is questionable whether any testimony that the semen looked different after the vasectomy would have been accurate. One authority states that "[t]o the naked eye, the semen produced after a vasectomy looks very much the same as it did before." 3 J. Schmidt, Attorney's Dictionary of Medicine V–18 (1979).

3. Defendant's final contention is that we should at least vacate the three criminal sexual conduct convictions. Our recent decision in *State v. Haase*, 341 N.W.2d 879 (Minn.1984), answered this question in the state's favor.

Affirmed.